UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 14-2965-SG

UNITED STATES OF AMERICA

vs.

KISHA SINGLETARY,

Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?   ___ Yes   _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   ___ Yes   _X_ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: /s/ Barbara A. Martinez
BARBARA A. MARTINEZ
ASSISTANT UNITED STATES ATTORNEY
Court ID No. A5500536
99 N. E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9146
FAX (305) 536-4676

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>KISHA SINGLETARY<br><br>*Defendant(s)* | Case No. 14-2965-JG |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 15, 2014__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591 | Sex Trafficking of Children, that is, in and affecting interstate and foreign commerce, to recruit, entice, harbor, transport, provide, obtain and maintain by any means a person, knowing or in reckless disregard of the fact that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Susan F. Romash, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 8, 2014

*Judge's signature*

City and state: Miami, Florida

Hon. Jonathan Goodman, U.S. Magistrate Judge
*Printed name and title*

## SEALED AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Susan F. Romash, a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, having been first sworn, hereby state as follows:

### AFFIANT'S BACKGROUND

1. I have been a Special Agent with the FBI since November of 2009. I am currently assigned to the Miami Field Office of the FBI, and I am a member of the Minor Vice Task Force (MVTF) in South Florida. The MVTF is comprised of state, local, and federal law enforcement which includes the City of Miami Police Department (MPD), Miami-Dade Police Department (MDPD), Miami Beach Police Department (MBPD), the City of Fort Lauderdale Police Department (FLPD), and the Broward Sheriff's Office (BSO), whose purpose is to address the Department of Justice's "Innocence Lost National Initiative." As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. That is, I am an officer of the United States, who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18 of the United States Code.

2. My current duties include the investigation of violent crimes, including offenses involving sex trafficking of children, in violation of Title 18, United States Code, Section 1591; enticing a minor to engage in prostitution, in violation of Title 18, United States Code, Section 2422(b); as well as offenses involving transportation for purposes of prostitution, in violation of Title 18, United States Code, Section 2421. Prior to being assigned to the MVTF, I was assigned to a Public Corruption/Civil Rights squad that handled, among other things, human trafficking investigations.

## PURPOSE OF THE AFFIDAVIT

3. This affidavit sets forth probable cause in support of the attached criminal complaint charging Kisha SINGLETARY with Sex Trafficking of Minors, in violation of Title 18, United States Code, Section 1591 and 2. The facts in this affidavit are based upon my personal knowledge, as well as knowledge, information, and documentation that I obtained from other law enforcement officers and witnesses. Since this affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter.

## FACTS IN SUPPORT OF PROBABLE CAUSE

### Statements of C.H.

4. On April 15, 2014, during the course of an investigation involving the potential prostitution of a minor in the area of a motel located on Biscayne Boulevard in Miami, Florida. The FBI, along with the City of Miami Police Department (MPD) and the Miami-Dade Police Department (MDPD), received information that another minor female was also residing in the motel. The information specifically stated that the minor was residing in Room 62 of the motel. In response to this information, law enforcement conducted a knock-and-talk on Room 62 and observed minor female C.H., SINGLETARY, and two adult males (hereinafter JOHN #1 and JOHN #2) all inside Room 62. All four individuals inside the motel room were transported to the MPD headquarters station, located at 400 NW 2nd Avenue, Miami, Florida, where they were subsequently interviewed by law enforcement. Law enforcement also conducted a follow-up interview of C.H. on April 17, 2014. During the interviews, C.H. provided the following information:

2

a. C.H., is a twelve year old female, who previously resided in North Miami, Florida with her mother and siblings. Approximately three to four weeks prior to April 15, C.H. ran away from her home and was approached by a female named "China" while C.H. was at a convenience store. "China" introduced C.H. to prostitution through the website known as Backpage.com. C.H. prostituted for "China" for approximately one to two weeks.

b. C.H. then left "China" and went to a friend's residence. While at the friend's residence, C.H. reached out to SINGLETARY, who was known to C.H. as "Kay," through the website Facebook.com. According to C.H., SINGLETARY had initially contacted C.H. through Facebook a few weeks before to ask if C.H. wanted to "work" for SINGLETARY. While at her friend's residence, C.H. asked SINGLETARY through Facebook if she could still "work" for SINGLETARY, and C.H. asked if SINGLETARY would come and get C.H. from her friend's house. In response, SINGLETARY agreed to pick up C.H., and they decided on a location to meet.

c. When SINGLETARY arrived to pick up C.H., SINGLETARY's boyfriend was also present and driving the vehicle. SINGLETARY and her boyfriend drove C.H. to the motel on Biscayne Boulevard, where SINGLETARY's boyfriend rented Room 62 for SINGLETARY and C.H.

d. Upon their arrival in the motel room, SINGLETARY took photographs of C.H. in her bra and underwear. SINGLETARY used a cellular telephone to take the photographs of C.H. SINGLETARY then posted photographs of C.H. on the website Backpage.com. SINGLETARY used the name "Kiwi" for C.H. on the Backpage.com advertisement.

3

e. Shortly after the advertisement was posted on Backpage.com, clients began to come to the motel room in order to have sex with C.H. SINGLETARY advised C.H. on the amounts to charge the clients for different sexual acts. C.H. recalled the amounts of money charged differed depending on whether the client wanted oral sex, sexual intercourse, or to spend the entire night with C.H. According to C.H., she saw clients from approximately 6 a.m. to 6 p.m. each day. When a client came to the room to have sex with C.H., SINGLETARY would leave the room and wait in another motel room, which belonged to a drug dealer C.H. only knew as "Pow Pow." C.H. gave all of the money she earned, with the exception of tips, to SINGLETARY. If C.H. did not earn enough money each day, C.H. would have to perform oral sex on SINGLETARY.

f. According to C.H., SINGLETARY had numerous other young females who also prostituted for SINGLETARY. C.H. advised that SINGLETARY preferred younger females, and knew that C.H. was twelve years old. C.H. also stated that SINGLETARY obtained illegal substances from the other motel resident, "Pow Pow," and provided the substances to C.H. and the other females. C.H. stated that the illegal substances included "mollies" and marijuana.

g. C.H. stated that she had been working for SINGLETARY for approximately one week prior to when she was recovered by law enforcement on April 15, 2014. C.H. stated that the two adult males in the motel room with C.H. and SINGLETARY when law enforcement arrived were clients, and she believed that they had paid SINGLETARY for C.H. to perform oral sex on them.

4

### Backpage Advertisement

5. Law enforcement located two advertisements for C.H. under the escort section of the website Backpage.com dated April 13, 2014 and April 14, 2014. The advertisement revealed photographs of C.H. wearing her bra and underwear, and identified C.H. by the name "Kiwi." The location information provided for the advertisement was North Miami or Miami Shores. The telephone number associated with the advertisement was (786) 663-6818.

### Interview of Singletary

6. On April 15, 2014, SINGLETARY provided the following information to law enforcement:

    a. SINGLETARY stated that she met C.H. approximately four months prior through Facebook. C.H. used the Facebook account name "Low'Key Kerria." SINGLETARY and C.H. communicated for a few months though Facebook, until recently, when C.H. told SINGLETARY that C.H. needed a place to live and asked to live with SINGLETARY. SINGLETARY agreed to meet C.H. at a location in Miami, so that she and C.H. could live together.

    b. SINGLETARY rented a room at the motel on Biscayne Boulevard for herself and C.H. Shortly thereafter, C.H. began to prostitute herself out of the motel room. SINGLETARY assisted C.H. with the prostitution, whereby she took photographs of C.H. wearing a bra and underwear for the purpose of posting the photographs on the website Backpage.com. SINGLETARY also provided C.H. with a cellular telephone, phone number (786) 663-6818, so that C.H. could set up dates with clients.

SINGLETARY also provided C.H. with an iPhone for personal use. C.H. was required to pay SINGLETARY one hundred dollars for the use of the iPhone.

### Interview of John #1

7. On April 15, 2014, JOHN #1 provided the following information to law enforcement:

    a. JOHN #1 stated that he met "Kay" (identified by law enforcement as SINGLETARY) one evening at a gas station. The two went home together that night, and then JOHN #1 didn't see SINGLETARY again for a while. Then, on April 15, 2014, SINGLETARY called JOHN #1 and asked him for a ride to the store. JOHN #1 agreed to give SINGLETARY a ride, but since he did not know SINGLETARY that well, JOHN #1 asked his friend, JOHN #2, to ride with him to SINGLETARY's home. SINGLETARY resided at the motel on Biscayne Boulevard at the time. When they arrived at the motel, there was another female in SINGLETARY's room (later identified by law enforcement as C.H.). JOHN #1, JOHN #2, SINGLETARY, and C.H. proceeded to smoke marijuana together, and then JOHN #1 and JOHN #2 took SINGLETARY to a store at a nearby gas station. JOHN #1 believed that SINGLETARY was going to pay for his gas since he drove her to the store; however, while at the gas station, SINGLETARY told JOHN #1 that instead of SINGLETARY paying for the gas, JOHN #1 and JOHN #2 could have sex with C.H.

    b. When they arrived back at the motel room, JOHN #1 went into the bathroom with C.H. JOHN #1 stated he intended to have sex with C.H.; however, he couldn't function properly because C.H. was acting "goofy." Consequently, JOHN #1

was unable to get the condom all the way on, and JOHN #1 claimed that he and C.H. did not have any sexual contact.

### Interview of John #2

8. On April 15, 2014, JOHN #2 provided the following information to law enforcement:

   a. JOHN #2 stated that he rode with his friend, JOHN #1, to the motel on Biscayne Boulevard because JOHN #1 was interested in a female who resided there. JOHN #2 knew the female as "Kay" (identified by law enforcement as SINGLETARY). When JOHN #2 and JOHN #1 arrived at the motel room to see SINGLETARY, SINGLETARY was accompanied by another female (identified by law enforcement as C.H.). Initially, the group smoked marijuana in the motel room, and then JOHN #2 and JOHN #1 took SINGLETARY to a store at a gas station. SINGLETARY also wanted JOHN #1 to take her somewhere else, and she told JOHN #1 that instead of paying for JOHN #1's gas, both JOHN #1 and JOHN #2 could have sex with C.H.

   b. When they returned to the motel room from the gas station, JOHN #1 and C.H. went into the bathroom together. A short time later, they exited the bathroom, and then JOHN #2 went into the bathroom with C.H. JOHN #2 stated that he planned to have intercourse with C.H.; however, he could not get aroused. Instead, C.H. performed oral sex on JOHN #2.

### Search of Cellular Telephones Recovered from Motel Room #62

9. During the knock-and-talk at the motel room on April 15, 2014, three cellular telephones were present in the motel room. SINGLETARY identified a black iPhone to be her personal cellular telephone, and she identified a white iPhone to be a cellular

telephone that she purchased and gave to C.H to use. Also in the room was a black Samsung cellular telephone, which SINGLETARY and C.H. both identified as the "business phone." During the interview of SINGLETARY, SINGLETARY provided consent for agents to search all three cellular telephones. A search of SINGLETARY's personal telephone revealed several Facebook messages between SINGLETARY and the account profile belonging to C.H., which was under the name "Low'Key Kerria." The messages revealed conversations related to C.H. residing and working for SINGLETARY. Specifically, SINGLETARY sent a message to C.H. which stated "U gone get on back page so we can get furniture u can have yo own room." Further investigation revealed that SINGLETARY's cellular telephone contained numerous photographs of C.H posing in a bra and underwear.

10.     Further investigation also revealed that the telephone number associated with the "business phone" was (786) 663-6818, which was the telephone number listed on the Backpage advertisements for C.H.

## CONCLUSION

11.     Wherefore, based upon the facts described above, your affiant respectfully submits that there is probable cause to believe that SINGLETARY knowingly recruited, enticed, harbored, transported, provided, obtained or maintained by any means a person, that is C.H., knowing or in reckless disregard of the fact that any person, that is C.H., had not attained the age of eighteen years old and would be caused to engage in a commercial sex act, which is in violation of Title 18, United States Code, Section 1591(a)(1). The facility and means of interstate commerce include, but are not limited to, the use of cellular telephones and websites, such as Facebook.com and Backpage.com, that were

8

utilized to recruit and advertise C.H. for purposes of prostitution. I therefore respectfully request that the attached criminal complaint be issued charging SINGLETARY with the above-described offense.

12. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this Complaint, including the arrest warrants. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

*Susan F. Romash*
SPECIAL AGENT SUSAN F. ROMASH
FEDERAL BUREAU OF INVESTIGATION


SUBSCRIBED and SWORN to before me this ___ day of August, 2014, in Miami, Florida.

JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

9